May it please the Court, my name is Kelly Warlick and I represent the petitioner-appellant Berman Justus, Jr. On November 1, 2003, Justus, who had no criminal or violent history, shot and killed his estranged wife's boyfriend and estranged wife while his four-year-old son was in the backseat. It was quickly apparent that he had serious mental health issues, and by January of 2004, he was forwardly psychotic. He was declared incompetent to occasions and admitted to Central State Hospital for treatment to restore his competency. After being restored to competency the second time, a bench trial was held in October 2006. Justus' defense was that he was not guilty by reason of insanity because he was acting under a hyper-religious delusion on the day of the crimes. Although both experts agreed that Justus had serious mental health issues on the day of the offense and that his health issues got worse after the offense, the judge ultimately concluded that he was not insane at the time of the crimes. Justus' trial counsel, Mr. Snook, appealed to the Virginia Court of Appeals, but the critical pages of the trial transcript discussing Justus' delusion on the day of the crimes was missing from the record, so the Court denied the appeal. Now, because of Justus' mental state and the difficulties in communicating with him, Snook did not consult with Justus on whether to appeal to a pre-judge panel or go directly to the Supreme Court. Snook prepared a petition for appeal to the Supreme Court as well as a motion for leave to supplement the record with those critical missing pages and instructed his paralegal to file the documents, but they were never filed. Snook's failure to file the appeal to the Virginia Supreme Court is the basis for Justus' habeas petition at issue in this appeal. Now, the district court concluded that the one-year limitations period on Justus' petition ran for a total of 735 days beginning on May 18, 2010 and ending on September 24, 2013 with two periods of statutory tolling in the middle. The district court concluded that Justus was not entitled to equitable tolling during any part of that limitations period. That conclusion was error based on the substantial record evidence of Justus' severe chronic mental illness. At the very least, the district court abused its discretion in bailing toll at evidentiary hearing to further develop the record on whether Justus is entitled to equitable tolling due to his mental illness. Equitable tolling requires a showing that an extraordinary circumstance beyond the petitioner's control prevented timely filing during the limitation period. Now, in concluding that Justus' mental illness did not prevent him from filing during the limitations period, the district court reasoned nothing he has submitted indicates a period of hospitalization after he was sentenced or while incarcerated and instead his records show that he was not even on medication for long periods of time while incarcerated. The district court correctly recognized that Justus has not been on medication for long periods of time, in fact, has been off his medication far more often than he's been on it. But the conclusion that it drew from that evidence is contrary to the record. The record is undisputed that Justus' medication non-compliance is a function of his illness rather than evidence that he's mentally stable and does not need medication. But what about, I mean, the district court was right, wasn't it, that there was sort of a gap in the records that your client submitted with the 60B petition. And so what do we do with that if there's just nothing attached to the petition that says anything about what was going on during the relevant federal limitations period? Doesn't that mean the record is incomplete? Yes, there is a gap in the medical records. That is, there are no medical records in the record during the 2010 to 2013 limitations period. But what is in the record is records from his post-conviction records starting from May 30th, 2007 and continuing through September 4th, 2008. Those are consistent records. But even before that, Justus' medication non-compliance started at the very outset. In the summer of 2005, after he had been restored to competency the first time, he started refusing his medication and he again decompensated, returned to a floor of psychosis, and was declared incompetent to stand trial. Now, going back to the post-conviction records, those records show, began on May 30th, 2007, and they show that he was compliant with his medication to November 14th, 2007. But that compliance was solely a function of his desire to be allowed to see his son. So, I'm sorry, is your point that, yes, there's a gap in the records during the relevant federal limitations period, but it doesn't matter because it's 100 percent clear from the record attached to the 60B petition, there's enough there to find, as a matter of fact, that he was, had a profound mental disability during that relevant period? That's what you're saying? Yes, Judge Harris, that's correct. What the records show that we do have is that he was not compliant with his medication for 70 percent of the time between May 30th, I'm sorry, 11-20-2007 and September 4th, 2008. And those records also are undisputed that his symptoms would not subside and his functioning would not improve absent medication. Well, let me ask you about this gap period from 2010 to 2013. How do we handle all the communications and papers he filed, including a complaint that particularly that his attorney didn't file the appeal? He filed letters to the Virginia State Bar complaining about his counsel and he filed a state habeas petition. And then he filed an amended state habeas petition claiming specific thing that he's now claiming. He filed a second complaint against the State Bar and it goes on. I think there's nine of them of major correspondences where, and he's in these papers, they're quite sophisticated. He talks about cause and prejudice and raises and cites all the cases that are appropriate. His grammar isn't always perfect, but he makes a specific point that he had requested an appeal and his counsel didn't take the appeal and he lays out these facts. All these occurred during the gap period. So, how are we supposed to take that? It would seem to me that it's hard to argue that he's beyond his wits to be able to file a petition when he was filing petitions during that period. A couple of points about that. The first, the Bar complaint he filed, he states in his 2019 affidavit that he learned that his trial counsel didn't file the appeal when he was in. And in his affidavit, he explains he has ins and outs, meaning that he has times when he's dealing with things in the present and times when he is not. Now, so he learned that his trial counsel didn't file the appeal when he was likely compliant with his medication, but when he was having an in period. Now, his subsequent filings, it's not clear from the record whether he had assistance with those or not. However, the extent of his filings are really quite limited. There was the Bar complaint in May 18, 2010. He then wrote two letters to Snook requesting his assistance trying to figure out how to get his appeal rights back. And then there was the amended petition in January 2011. As you mentioned, the letter to the Bar again in January 20. Well, he first filed the habeas petition in November 2010. And then he filed an amended petition complaining particularly about his complaint here in January. And all of this is pro se. And then he filed another complaint with the State Bar. That's just about half of what I can go down on. The record shows what it shows. But my only point is the very relief he's seeking is that he doesn't want to bear the responsibility for filing a federal petition within one year from when he learned of this. And he clearly learned of this during this period where he has all this correspondence and explains it in some detail. And it seems to me he apparently didn't know the law. But this does not reveal somebody that was incapable of corresponding and filing petitions and doing things. As a matter of fact, as I said, if you read the substance of these papers, they're quite lucid and very rational and persuasive in some respects. The one point I would make is that we don't know. A lot of these filings are actually not in the record. For instance, the November 17, 2010 petition is not in the record. Now, the amended petition in January 2011 is. But it's not clear whether he prepared that on his own or whether somebody else prepared that on his behalf. And in the motion for reconsideration that Justice swore to under oath, he- Everything, all the letters, all of them seem to be in the same handwriting. The only one that I had help on was a very late document. It was a, maybe it was the federal petition or whatever. But the earlier ones looked like his handwriting all the way through. But you can, the records, it shows what it shows. And it seems to me the burden to show that these were not his documents would be on you. I'm assuming these are documents he filed. He wrote a letter to the Wallen State prison to find out whether they had received a particular letter. I mean, all of these things are reactions to letters and he'd receive a letter back from his counsel and respond to it. It's seems to be evidence that at least during this period, his illness, I mean, he is clearly at times, he's terribly ill. There's no question about it. You make the case very persuasively on that. But the question is a follow-up of Judge Harris's question, which is this 2010 to 2013 period when he did all these communications and petitions. Well, I would point out that most of the petitions and letters that you are referring to occurred during the first period during which the statute of limitations ran, which is the 183-day period from May 18th, 2010 to November 17th, 2010. With the exception of- You know, under the laws, if a state petition is untimely, it doesn't toll the time. You know that. So we're really talking about the full time between the 10th, the 13th. It's running continuously. I understand that the Virginia Court of Appeals denied, or I'm sorry, the circuit court denied the petition as untimely. Now, the district court found that justice didn't realize that the snook had failed to file his appeal until May 18th, 2010. Now, given that he filed it November 17th, 2010, whether it is in fact untimely- No, my point is that it doesn't stop the running. In other words, normally you file a petition in November and it's told. But when it's untimely, the cases say that it does not toll. Correct. Okay. Counsel, can I ask you a question about the underlying ineffective assistance claim? Did your- I'm just a little bit unclear. Did your client request that the appeal be taken to the Virginia Supreme Court? That's the way he seems to talk about it. And then the lawyer did not take the appeal. Is that what happened? Or was there no request to take the appeal? There was no request because Mr. Snook did not consult with justice because of the difficulties in communicating with him during his mental state. And at that time, the record shows that he was in fact not compliant with his medication. Thank you. Now, at the very least, there is substantial evidence of both severe mental illness that prevented him from filing during substantial portions of the limitations period that is sufficient to warrant an evidentiary hearing. He is non-compliant with his medication for most of the period that he has been incarcerated. That's undisputed in the record. What is also undisputed in the record is that when he is not in his medication, he experiences psychotic symptoms, visual hallucinations, auditory disturbances, paranoia, hypervigilance, among other symptoms. Those symptoms prevent him from effectuating competent filings or securing assistance to effectuate those filings. So, counsel, I know that our briefing order, we ask you only to brief the question of the entitlement to equitable tolling. But I was wondering about this. So, if your fallback argument is there ought to be a hearing, and it does seem to me that if the record is incomplete, but there's a lot of evidence suggesting that there may be a serious problem here, you know, you could either say one way to look at it is that if the record is incomplete, then the petitioner hasn't met his burden. But the other way to look at it is that, well, I guess there ought to be a hearing because we don't have a complete record. And yet, there are some serious concerns here. Does it matter at all that this question is coming up under Rule 60B? Does that posture affect anything about how we should think about the hearing question, the circumstances under which the petitioner would be entitled to a hearing? No, I don't think so. And here's why. After he initially filed his petition, he was advised that it was untimely. And he was given 10 days to file proof that it was timely. Now, he did file a brief within the time limit. I realize my time is up. He did file a response nine days after that deadline. So, within the time limit, it did not address the timeliness during the relevant period. But given that short time limit, the motion for reconsideration that he filed down the road should be treated as part of his initial petition. What's the standard on a 60B motion? I would need to refer back, Your Honor. I don't quite understand. In other words, there was a determination made and he didn't appeal. So, he asked for a 60B determination and the court rejected that. What standard does the standard of a 60B denial? I believe it was under 60B-6, but I need to refer back. 60B-6. I'm not sure what the standard of review is from a 60B denial. Wouldn't that be important for us to understand our review standard? That's what we're reviewing now, right? Yes, but this court determined that the Rule 60 motion was timely and granted the Certificate of Appealability. In fairness, our briefing order said, brief the question of equitable polling, period, so I can see how there might be. But it does strike me that nothing about our briefing order can actually change the posture of the case. We are here under 60B. Okay. Thank you. Counsel? Ms. Tashima? Good morning, Your Honors, and may it please the court, Rohini Tashima for the respondent. EdBun poses a strict one-year statute of limitations for prisoners seeking federal habeas relief. The bar for equitably tolling this limitations period is high and should only occur in the rarest of cases. Isn't this a very rare case? I mean, we have a petitioner who was declared incompetent twice. There's no question that in the years immediately preceding this limitations period, he was a judge, floridly psychotic, a profound mental issue. Seems to pass muster even under our SOSA standard. We know it's a chronic condition. We know that it is not being I mean, this does strike me as an unusual case, just given the obvious and well-documented severity of the mental issues here and how close in time they are to the limitations period. And then on top of that, I guess I'll just ask you to address this. On top of that, we have our finding, this court's finding, that whatever those mental incapacities are, they were also in effect between 2014 and 2019 because that's what made the 60B petition timely. So when I put all of that together, why isn't this a very exceptional case? Your Honor, he was initially adjudicated to being competent, but since then he was to competency, competent to stand for trial. And since then he has not been deemed to be incompetent. Even though- Has anyone asked? I mean, it's not a snarky question. Was there a time when his competency was, has anyone reviewed his competency since the first two times? Not for a legal proceeding, but even in his 2008 medical records where he was sort of switching in and out of accepting medication, his doctors were very clear that even then he still retained the mental capacity to refuse treatment. In other words, he was mentally competent to make these decisions for himself. And it's clear from the record, even though we're missing the 2010 to 13 records, that his mental health fluctuated over time. For instance, in one of the more recent records in August 2016 at JA228, the doctor noted that he had been discontinued from all psychiatric medications since the end of June. In that ensuing month and a half, so that's a month and a half with zero psychiatric medication, Justice still had no abnormal thought content, no delusions, no audio or visual hallucinations, and no other perceptual disturbances. This shows that his mental health fluctuated over time, and that's in keeping with how chronic mental illnesses progress. Indeed, the very same mental health treatise Justice relies on in his opening brief goes on to explain that chronic mental illnesses wax and wane in intensity. And that is exactly the same for Justice. Because his mental health waxed and waned, it cannot be assumed that his health throughout 2010 to 13 was identical to his mental health in a completely different time period. Shouldn't there be a hearing to figure that out? I mean, I understand what you're saying about the record attached to the 60B motion. But given, you know, what we know was going on at a time very close to that, and given what appears to have been this court's finding that his mental illness was severe enough to excuse a five-year delay between 2014 and 2019. So we have sort of these bookends around this period. Isn't that enough to raise sort of a plausible claim that, you know, you don't have to assume that it was the same, but it might well have been? No, Your Honor. Justice was actively engaged with the legal process on this claim. He kept filing things late. This is what I don't understand. And I'm sorry, I'm asking way too many questions. But the question is not, can he send letters? The question is, does his mental illness make it, prevent him from filing a timely petition, understanding the deadline, understanding the need to comply with it? And all we know is that his first state habeas petition was late. I mean, you guys make some emphasis on that in your brief. The second one was dismissed for reasons I can't find in the record, but quite possibly some other sort of procedural thing. So I don't see what in this record shows us an ability to file timely, procedurally compliant court documents. Your Honor, Justice was active in state courts. His lack of knowledge of, is sort of the fact that he didn't know he needs to file what he filed in state court, in federal court instead, it does not entitle him to equitable tolling. This court was very clear in Sosa that even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling. But if it is his mental illness that is preventing him, I mean this, I'm just reading from, effectively reading from the Ninth Circuit decision, I think it's bills. If your mental illness is what prevent, there are two ways it could prevent you from filing a petition. One is it makes it impossible for you to actually prepare and submit a petition. I agree with you, that's not what's going on here, right? He's preparing lots of things. He is communicating with the courts. But the other way is it could make it impossible because of your mental illness, not your ignorance of the law, your mental illness makes it impossible for you to timely file court documents because either you can't, your mental illness prevents you from figuring out the deadline or it just prevents you from understanding that you need to file these things on time. And I don't understand how this record of some letters that are not on a timeline to the Virginia Bar Association and a late filed state petition refutes that kind of causation. Because, Your Honor, even Justice contends that he only, he filed in state court because his attorney told him to. That comes down to him just not knowing, understanding AEDPA itself, which goes to legal knowledge. Justice was actively pursuing this claim. His state habeas petition raised arguments on this claim, even included citations. He then followed up with his counsel and filed not one, but at least two separate bar complaints during this time period about this claim. Justice even requested prison mail rooms specifically to this claim. And that shows that not only was he capable of pursuing this claim, but that he actively did so. It's just that he didn't realize he needed to file in federal court. But this court in Sosa explained that ignorance of the law does not excuse this issue. And Justice is thus not entitled to equitable tolling on this ground. In any event, that same history shows that he was not reasonably diligent because it's not reasonably diligent for someone to repeatedly file and pursue this claim in state court and with the Virginia State Bar, but to not file the exact same claim in a federal court. What did the Virginia State Bar do in this case? It investigated his claims against Mr. Snook, his trial counsel, and I believe it ultimately dismissed it. Dismissed because it found that it was filed? I'm sorry. The Virginia State Bar dismissed it. Dismissed because it found that he actually filed for a writ of error with the Supreme Court of Virginia? He didn't, did he? He did not, Your Honor. What did they find in an investigation that made him dismiss it? I'm not sure that's in the record, Your Honor. The Virginia State Bar letter to Justice just explained that they had investigated the issues and gotten an affidavit from Snook, and I believe chose not to. But this is direct appeal, correct? In a sense? Wasn't it direct appeal? He'd go on from the Court of Appeals to the Supreme Court of Virginia, right? I'm sorry. Was he entitled to counsel? In the state, actually. Was he entitled to counsel at that point? On the direct appeal, I believe he may have been, Your Honor, but I'm afraid I'm not sure on that. I'm sorry. I thought you were asking about the Virginia State Bar proceedings. No, no, no. I'm sorry. I'm finished with that. You told me they investigated and dismissed it. I don't understand that, but go ahead. But you said he wasn't entitled to counsel at all. That I'm not sure of, Your Honor. In terms of perfecting the appeal to the Supreme Court of Virginia, I believe he was because that was part of the direct appeal, but with respect to the Virginia State Bar proceedings. I'm not talking about the Virginia State Bar proceedings. I'm talking about the Supreme Court of Virginia now. Wasn't he entitled to counsel? I believe he was, but that goes to the merits of his claim, whether or not he was entitled. No, it's not just the merits. You're saying that he didn't exhaust his state remedies because he didn't file a... He didn't go to the final court that he could have done something with on the state side, right? That's an exhaustion problem for him, wasn't it? In the state court proceedings versus... Yeah, if you don't file on time, then you just fail to exhaust your claim, really. I believe with respect to the actual 2010 to 13 limitations period, we haven't had to dive into the exhaustion requirement because Judge Moon made several assumptions that were favorable to justice and said, we'll assume the statute of limitations began running in 2010. And he went ahead and gave him statutory tolling for when his state petitions were filed, even though at least one of them was dismissed as untimely. But even throughout that entire period, justice was highly active in pursuing this claim, which shows that he was not profoundly mentally incapacitated. And this court can and should affirm on backgrounds. If there are no further questions... So you're saying severely mentally ill people, it means they can't read? You have to... Does that follow? If you're severely mentally ill, you can't read and write, that's what you're saying? No, Your Honor. Well, then that seemed like you're putting a lot on the fact that he filed something in writing to court. No, Your Honor. It's that he filed repeatedly and made these specific arguments. This wasn't just a piece of paper where he stated generally that he wanted previous relief. He made the exact argument that he sought to raise in his federal petition. And that shows that he was not only capable of understanding his claim, but that he was capable and actively did pursue that claim. And because of those actions, he was not profoundly mentally incapacitated. And Judge Wu's order should be affirmed. We didn't ask you all to brief the 60B posture of the case, but I do wonder, do you have any particular view about when a petitioner would be entitled to a hearing under Rule 60B? It seems from your brief that you're taking the position that we would apply the same standard we apply if this were coming up on review of the original, the original habeas petition. That it's the same kind of question. You get a hearing under the same circumstances. I believe so, Your Honor. If this court would like supplemental briefing on the Rule 60B issue, we'd of course be happy to comply. But because justices' litigation history shows that he was not profoundly mentally incapacitated and not reasonably diligent, he is not entitled to a hearing and this court should affirm. And under 60B, I do still have questions. So, under 60B, or under 60B6, it looks like a petitioner would need this showing of exceptional circumstances, sort of above and apart from the exceptional circumstances you need for equitable tolling. And that one of the things we would look at there is the merits of the underlying claim. And I'm just wondering, do you have any views on the merits of the underlying ineffective assistance claim, which I think maybe Judge Gregory was getting at before also? I mean, it seems like this guy, through his lawyer's own mistake, the lawyer appears to have acknowledged this now. You know, he never got a direct appeal in his case. That seems problematic. But I was wondering if you had any views about the underlying merits of the claim, because that is relevant under Rule 60B6. Not at this time, Your Honor. Neither party has briefed the actual merits of his petition. But you agree there's nothing in this record that says he was ever well mentally? No, Your Honor. I disagree with that. There have been times, such as in August 2016, where he was not psychotic and that's even without medication. It's clear from the record that his mental health fluctuates. So, there are times when it's worse and there are times where it's a lot worse. A DSM-III finding of severe mental illness, those are periods of asymptomatic and symptomatic. That's not the same thing as you're healed. I think waxing and waning was mentioned in that sense. Because there's a waning period doesn't mean you're healed. There are people who have schizophrenic disorders and they are highly functioning intellectually. But when they're manic or when they're depressive, it's a different matter because there's a lot of chemistry involved. But that doesn't mean you're well. Your Honor, he did continue to have these disorders. But the question for profound mental incapacity is not whether he has been diagnosed with something. It is whether that incapacity at that specific point in time caused him to fail to file on time. And this is where the waxing and waning issue comes into play. Because there are periods of time where justice, as seen through his lengthy interactions with the legal system, that he is capable of pursuing this claim. So the fact that he was not- The way you just, I'm sorry, I keep coming back to this. You just phrased the standard a phrase ago as whether his mental illness made it, prevented him from filing on time. I guess I just want to give you, ask you one more time. What is it in this record that shows that his mental illness does not prevent him from filing things on time, given that his state petition was late? Why doesn't that help him? If his argument is, because of my mental illness, and I really actually can quote from Billings because I found it. It's not that it prevents me from filing things. I can file things and I can send letters. I am capable of doing that. But what I can't do is file things timely. Why doesn't the fact that his big state petition is untimely actually help him? Because that took place in a different court. If he had filed that state petition in federal court on that date, under Judge Moon's assumptions, that would have been on time. The fact that he doesn't understand AEDPA is unfortunately not a ground for equitable tolling. It is if it's because of his mental illness. I know we've said a million times ignorance of the law is not grounds for equitable tolling. But we also have said profound mental disability is, if that is, what makes you ignorant of the law. So I don't see why saying the fact that you don't know the law isn't grounds for equitable tolling is really responsive to the concern here, which is that it is because of a severe mental illness that this person is unable to follow the intricacies of the law. But, Your Honor, he was filing repeatedly in the state courts and with the Virginia State Bar, and even requesting his prison mailrooms, which shows that he knew what had to be done. He didn't recognize that it needed to be done in federal court as well. And for those reasons, this court should affirm. Are there no further questions? Thank you. Judge Ayers, you had asked if the government had argued that he has not been declared incompetent at all since he was first declared incompetent twice before trial. While there is no evidence in the record that he has been declared incompetent for the time period we have medical records, those records show he was frequently on the verge. On 2-2008, he reported feeling that he was about to decompensate, and his doctor noted that he didn't see his functioning improving without medication in a trial of single-cell living. Just later, on March 17, 2008, his doctor noted that he understands I will commit slash criteria at this time. Admit to MCTC if his psychosis plus dysregulated moods decompensate further. At the very least, the evidence in the record, which is undisputed that he suffers from ongoing recurring periods of severe mental illness and that his symptoms from that illness prevent him from effectuating competent filings on time, entitled him to an evidentiary hearing. Now, his filings are during the limitations period, are isolated sporadic incidents. And most of them are not in the record, and we don't have the background to be able to evaluate whether those were accomplished through others or whether he effectuated on his own. And these are answers that require an evidentiary hearing. And, Judge McGregor, to answer your question about the Virginia State Bar, they did not dismiss the complaint because there was not clear evidence in order to support any further action, and that is why Justice sent the... Not clear evidence whether he filed it? I think... This seemed to me just go to the clerk's office. I mean, I don't understand it. Mr. Snook sent a letter to the bar, and it just concluded there's a June 28, 2010 letter, 2011, I believe, from the bar stating that there was just not clear evidence. Of what? The only issue was, did he file it or didn't he? Did he file it or didn't he? What's the problem? How can you not file it? I don't understand that. Agreed, and I don't think there wasn't a specific reason. I mean, counsel conceded that, didn't he? Yes. And you said the bar couldn't find that one way or another. Does it matter fact? That is what the letter said. And I also just want to point out that he really never got a full appeal right to the court because, again, those critical pages of the trial transcript were missing. So nobody even suggested that the state ought to allow him now to file the appeal or nothing? Just that was it? Just we can't find anything? It's over? And that's why I understand that his first petition was denied as untimely. However, given the circumstances, I don't submit that it actually was, in fact, untimely under the law, and there wasn't some sort of tolling mechanism because he had just found out that the appeal had not been filed. Okay. However, these... It's kind of like a Martinez issue, but not quite, isn't it? Sort of, you know, ineffective assistance of counsel at the state level and not being able to be resolved there. We, in the federal court, we go back and look at that. So it's sort of a, you know, this may seem a bit of a Martinez filing should have been, I mean, seem to be at play here to some degree to get back to the merits of it, which he never had an opportunity to at that vertical level on the state side to even finish it. Now we're into this, and as you know, it's very difficult when you get on this side for relief because it's all kinds of presumptions and, you know, preferences are given to a state action, but you look at the state action, it went off the rails. And then when he sought help through some way to the bar, I don't understand what it means it was not conclusive. But anyway, that's not before us, but this case is profound evidence, evidence of profound mental illness. I just understand it. But anyway, go ahead and finish up. Just to conclude, when there's no evidence in the record that his condition changed during the limitations period at issue, and the only evidence of record indicates that he suffers from a mental incapacity that is ongoing throughout the entirety of the limitations period, and evidentiary hearing is at least required. Thank you. All right. Thank you, Ms. Warlick. And I note that you're a court opponent. I just want to say on behalf of the Fourth Circuit, we give special note and appreciation for your doing that because our court depends on lawyers like yourself who take these cases, very difficult cases, and thorny issues to help us tread through them. We really appreciate it. Thank you so much. Thank you. And Ms. Tashima, we also obviously note your representation of the Commonwealth of Virginia. All right. We can't come down and greet you like we would in our normal fashion, but know that we appreciate your being here. We wish you well and be safe. Thank you. Thank you.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris